WILLIAM DEERING & COMPANY V. JOHN A. WISHERD.

FILED JANUARY 9, 1896.   NO. 5833.

1. **Sheriffs and Constables:** POSSESSION OF ATTACHED PROPERTY: DAMAGES. It is the duty of an officer who seizes personal property on a writ of attachment to take such property into his actual possession, and to keep it under his control and have it forthcoming to answer the judgment of the court; and for a neglect of this duty such officer and his sureties are liable to the party injured thereby.

2. ———: ———: COSTS. Where an officer seizes the property of a defendant on a writ of attachment he may lawfully return as costs in the attachment proceeding all the actual, necessary, and reasonable charges and expenses which he has incurred in the taking possession, removal, and preservation of the attached property.

3. **Attachment:** COSTS. On the discharge of an attachment the costs and expenses incident thereto should ordinarily be taxed to the party suing out the attachment.

ERROR from the district court of Madison county. Tried below before POWERS, J.

*Thomas D. Crane,* for plaintiff in error:

The authority to tax costs is strictly statutory. Every item entered against a party must find its warrant in some statutory provision. There is no statutory authority permitting an officer to return as fees, or a court to tax as costs, anything for the care or custody of attached property upon

dissolution of the attachment. (*Reed v. Smith*, 25 Neb., 64; *Genesee County Savings Bank v. Ottawa Circuit Judge*, 54 Mich., 305; *Stanton County v. Madison County*, 10 Neb., 308; *Cramer v. Oppenstein*, 27 Pac. Rep. [Colo.], 713.)

*Allen, Reed & Ellis, contra.*

RAGAN, C.

William Deering & Co. sued John A. Wisherd, at law, in the district court of Madison county and at the same time caused an attachment to be issued for the seizure of Wisherd's property. On the 26th day of September, 1890, the sheriff, by virtue of the writ of attachment, seized and took into his possession the following property belonging to Wisherd: Two stacks of hay, twenty-nine head of hogs, shoats, and pigs, three colts, one team of bay mares, five head of horses and ponies, eight head of cows, heifers, and calves, one bull, two hundred acres of corn—standing in the field— three listers, one tricycle plow, two wagons, one hay rack, one set of harness. This property the sheriff retained in his possession until the 22d day of April, 1891, on which date he returned it to Wisherd, the court having on said date dissolved the attachment. The sheriff, on his return to the writ of attachment, charged in the attachment suit the following bill of costs:

| | | |
|---|---:|---:|
| Service and return.................................... | $0 | 50 |
| Copy ..:............................................... | | 25 |
| Mileage................................................. | 1 | 50 |
| Making levy............................................ | 1 | 00 |
| Calling appraisers.................................... | | 50 |
| Swearing the same .................................... | | 50 |
| Fees of the same..................................... | 4 | 00 |
| Making appraisement.................................. | 1 | 00 |
| Taking care of and feeding horses and cattle from Sep. 26, 1890, to April 22, '91, 209 days at $2.00 per day.................................... | 418 | 00 |

Husking 200 acres of corn, estimated at 2,000 .
   bushels, at .05 per bushel........................... $100 00·
7 trips to Wisherd's ranch, 28 miles................    2 80
Expenses to Omaha and return.....................   20 00·

   Total...................................................... $550 05
Rec'd of plaintiff's attorney...........................    2 00

·Balance ............................................ $548 05

The district court, on motion of Wisherd, made an order
taxing these costs to Deering & Co., and to reverse this
order the latter have prosecuted to this court a petition in
error.

1. It is first argued that the finding and judgment of
the district court are not supported by sufficient evidence.
This contention is especially directed to the items of $418
and $100, charged by the sheriff for taking care of the
live stock and husking the standing corn. The evidence
is undisputed that the sheriff .caused the standing corn to·
be husked, and that he employed a man and put him in
charge of all the property levied upon the day it was seized
and kept him in charge of the same until the attachment
was discharged. Whether the expenses incurred by the
sheriff in feeding and taking care of the live stock and
the prices paid by him for husking the corn were reason-
able charges and expenditures was a question submitted to
the court on conflicting evidence; but such evidence sup-
ports the finding of the court.

2. Counsel for plaintiff in error next says that "there
is no statutory authority permitting an officer to return as·
fees or a court to tax as costs anything for the care or cus-
tody of attached property; but counsel have overlooked
the statute. Section 26, chapter 28, Compiled Statutes, is·
as follows: "That in all cases where writs of attachment
against property are issued the officers to whom such writ
is directed for service shall be empowered to demand in

advance and receive before said service the regular fees for service of papers and in addition thereto a sum of money sufficient to defray the expenses incurred for work and labor in the taking possession of or removal of the property ordered attached and for the safe keeping thereof, said sum to be taxed in the costs." If the sheriff might lawfully demand of Deering & Co., in advance, a sum of money sufficient to defray the expense of taking possession of and preserving the property attached, it logically follows that he might lawfully return as costs in the attachment suit all actual necessary and reasonable charges and expenses which he had incurred in the taking possession, removal, and preservation of the attached property. In the case at bar, as already stated, a part of the attached property was 200 acres of standing corn. The district court was of opinion, and we agree with him, that the sheriff kept within the line of his duty when he caused this corn to be husked and thus preserved. The sheriff hired a man to husk this corn, and the preponderance of the evidence is with the finding of the court that the price paid was a fair, reasonable, and usual price for husking such a crop as this was. The sheriff kept the attached stock on the ranch where it was when attached, and hired a man at the rate of $2 per day to look after this stock, preserve it, keep it together and feed it, and the court found, and the evidence supports his finding, that this was a necessary and reasonable precaution on the part of the sheriff, and that the price he paid the man hired was a reasonable and fair compensation. It is the duty of an officer who seizes personal property under an execution or a writ of attachment to take such property into his actual possession, and to keep it under his control and have it forthcoming to answer the judgment of the court, and for a neglect of this duty such officer and his sureties would be liable to the party injured thereby. It would be an intolerable hardship for the law to require of an officer, when he should seize personal property in obedi-

-ence to a writ of attachment, to preserve it at his peril and .at the same time deny to him a reimbursement of the act- ual necessary and reasonable expenses incurred in performing his duties. It was to prevent just such an injustice that the legislature enacted the statute quoted above. The judgment of the district court is

AFFIRMED.