JAY LEADABRAND v. STATE OF NEBRASKA.

FILED OCTOBER 30, 1931. No. 27958.

*William E. Shuman,* for plaintiff in error.

C. A. Sorensen, Attorney General, R. H. Beatty and Milton C. Murphy, contra.

Heard before Goss, C. J., Dean, Eberly and Paine, JJ., and Blackledge, District Judge.

Paine, J.

Jay Leadabrand prosecutes error proceedings to this court from a sentence and fine for contempt of court.

On November 8, 1930, Anton Pushman filed suit in the district court for McPherson county against Ed H. Guthard for the sum of $1,026.52, due on promissory notes, and on the same day had an order of attachment issued, which the sheriff levied upon an undivided two-thirds interest in corn standing in the field upon land near the southwest corner of McPherson county, owned by Jay Leadabrand, a third party. In making the attachment the sheriff fastened a notice under a barbed wire on a post at the corner of said land, in which notice the sheriff erroneously described the interest he had attached as one-half instead of two-thirds of the field of corn, but at the same time the sheriff went to Leadabrand's house and notified him of the attachment and warned him that he should not take any of the two-thirds of the field of corn which had been attached. Leadabrand found the defective notice the next morning when he went to get the mail, removed it and took it to his home, and in spite of repeated warnings from the sheriff, from the plaintiff who had brought the suit, from the attorneys for the plaintiff orally in North Platte, and in a written letter mailed to him by said attorneys, he deliberately continued to gather the corn and feed it to his cattle.

The plaintiff in error says in his brief: "The whole controversy in the contempt proceedings was over the claim that the sheriff had attached two-thirds interest in the corn and that Leadabrand was gathering one-half and therefore was gathering a portion of the corn attached." The sheriff, finding that Leadabrand continued in stubborn disregard and defiance of his verbal notice and warnings, brought proceedings, as provided in sections 20-1036 and

20-1521, Comp. St. 1929, to try out before a jury of five men and determine the right of Leadabrand to any part of the two-thirds interest in the corn. At this trial, upon hearing the evidence, the jury found that Leadabrand had only a one-third interest in the corn and had no right to any part of the two-thirds portion attached, and at the close of this trial Leadabrand was again warned that he would be prosecuted for contempt if he persisted in picking the attached corn, but nevertheless he did continue to pick the corn until he had picked approximately the half which he claimed.

Upon January 31, 1931, Dan V. Platt, sheriff of McPherson county, filed in the district court an affidavit for citation for contempt, setting out his attachment of two-thirds of the corn standing in the field, his personal notice thereof to Jay Leadabrand, his warning to him not to take more than one-third of the corn from the field, that the balance or two-thirds of said corn was in his custody and possession; sets out two additional dates on which he drove to said place and again warned the said Jay Leadabrand of his wilful disobedience and resistance to the lawful process and order of the district court, and prayed the court to enter an order directing the said Jay Leadabrand to appear before the court and show cause why he should not be committed for contempt of court; that thereupon a citation was issued by the district court and served upon the said Jay Leadabrand, directing him to appear and show cause upon February 10, 1931; and upon said day the said Jay Leadabrand filed his answer, denying that a valid or lawful levy had ever been made upon said corn, and denying that he had ever taken more than the one-half thereof, alleging he has always had full and complete respect for the courts, and asking that he be dismissed and discharged. Trial being had and the testimony of the witnesses being set out in nearly 200 pages of evidence, the court, being advised in the premises, ordered and decreed that the said Jay Leadabrand be fined in the sum of $75 and costs and stand committed until the same are paid. Motion for new trial being overruled, the sentence was sus-

pended pending appeal to this court on the giving of bond in the sum of $300.

The testimony of Anton Pushman is that he made a trip to McPherson county on December 13 and had a conversation with Leadabrand. "Q. Will you relate the talk you had with Leadabrand, what talk you did have? A. Well, we had a talk and I met him a half mile from the house. I asked him, I said, 'Jay, you are husking the corn, aren't you?' He said, 'Yes.' I said, 'Don't you know you are going above the law?' He said, 'I don't care about the law.' He said, 'I have got to have corn.' " Jay Leadabrand testified that he had very limited educational opportunities, only reaching the fifth grade in a country school. "Q. Is it your understanding of the law that, when the sheriff goes out and attaches property, you have a right to forcibly take that property away from the sheriff? A. If it belongs to me, I have a right to my own property. Q. So you think that, regardless of the fact that if the sheriff attaches property and it belongs to you, that you have got a right to take it forcibly away from him, against his will? A. I didn't take any property only one-half which he attached. * * * Q. You say that you didn't know that the sheriff had attached two-thirds of this corn out there? A. He told me that he had, but his notice showed only one-half. Q. He told you a half dozen times that he had attached two-thirds of the corn. A. Two or three times."

The first question to be considered is the error in the notice posted on the land by the sheriff, which stated that he attached but one-half of the corn instead of two-thirds, as he was directed to do; and to support the proposition that it is no defense in a contempt proceeding that there are irregularities in the attachment proceedings so long as the court has jurisdiction, our attention is directed to the case of Nebraska Children's Home Society v. State, 57 Neb. 765, being a contempt proceeding based on a violation of the judicial order, in which it was held that such an order may be examined only with a view to ascertaining whether it was coram judice. No mere error or irregularity thereon, or in the proceedings leading thereto, excuses its disobedience.

The case of *Miles v. State*, 74 Neb. 684, held that an order must be respected by all parties until it is set aside by the court, and that if one knowingly disobeys an injunction which is not voidable he is liable to punishment for contempt. *Kregel v. Bartling*, 23 Neb. 848.

In *Winchell v. McKinzie*, 35 Neb. 813, it was held: "Where proceedings in attachment are irregular and erroneous, but not void, such errors and irregularities cannot be taken advantage of by third parties in a collateral proceeding." See *Smith v. Schlink*, 44 Colo. 200.

"A party is guilty of contempt who wilfully disregards, or refuses to comply with, an order of court directing him to restore the subject-matter of litigation, if the court possessed jurisdiction to enter the same, although the proceedings may have been ever so erroneous." *Jenkins v. State*, 59 Neb. 68.

In proceedings in contempt for failing to obey an order of court, respondent may question the order only in so far as he can show it to be absolutely void, and cannot be heard to say it was merely erroneous. *American Cigar Co. v. Berger*, 221 Ill. App. 285.

Mere irregularity of order or process issued by court within its jurisdiction and power held not to excuse disobedience. *Burtch v. Zeuch*, 200 Ia. 49, 39 A. L. R. 1349.

"It is well settled that actual notice of the injunction is sufficient to render even one who was not a party guilty of contempt in violating it, and that it is not necessary, if he had actual notice, that he should have been served with a copy of the injunction or the writ." 6 R. C. L. 504, sec. 16.

Complaint is made that the sheriff did not perform his duty in not taking this crop of standing corn into his possession, as section 20-1008, Comp. St. 1929, requires that, where it is personal property "and accessible," he shall take it into his custody and hold it subject to the order of the court; and corn in the field may be gathered and the expenses allowed, as in *Deering v. Wisherd*, 46 Neb. 720. But the sheriff in his testimony explained that a snowstorm prevented him from gathering the corn for quite a while

and in the meantime a large portion of it had been gathered and fed by Leadabrand.

It is also claimed that the order was void and that Leadabrand is not concluded by a judgment in a suit to which he is not a party, but we find that the order was valid. It is said that the state is the real prosecutor in contempt proceedings, and that a fine or sentence for contempt will not be reviewed in a proceeding to which the state is not a party. No one of these charges requires a reversal of this case, and we quote the following from another decision: "It may not be out of place to say that the sentence appears to have been fully warranted. The record shows a settled purpose and persistent effort * * * to trifle with the court, defy its decree and obstruct its process. Such a course of conduct is not to be tolerated. * * * But when it takes the direction of open defiance of the orders and decrees of a court of competent jurisdiction, it becomes reprehensible and should be summarily dealt with and punished as contempt of court." *Whitaker v. McBride,* 5 Neb. (Unof.) 411. See *Auto Highball Co. v. Sibbett,* 11 Ga. App. 618.

In contempt proceedings growing out of an attachment, one who was not a party thereto, but to whom the sheriff had given personal notice thereof, may be held for contempt, even though there was a mistake in the notice posted, as such an error does not excuse deliberate, repeated disobedience of an order of attachment of the district court.

It is therefore ordered that the judgment of the district court be affirmed.

AFFIRMED.