**In re E.R., L.A.R., Appellant.**

**No. 92–FS–694.**

District of Columbia Court of Appeals.

Oct. 27, 1994.

---

George C. Dreos, for appellant.

Robert Baker, for appellee E.R.

John Payton, Corp. Counsel at the time the order to show cause was issued, Charles L. Reischel, Deputy Corp. Counsel, and Mary Wilson, Asst. Corp. Counsel, for District of Columbia.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

■ On September 9, 1993, this court stayed the briefing of this appeal and ordered appellant L.A.R. (the mother) to show cause, if any there be, why this appeal from an adjudication of child neglect should not be dismissed as moot. The order to show cause was issued because L.A.R.'s daughter E.R., the child who is alleged to have been the victim of neglect, has been returned to El Salvador and is no longer within the jurisdiction of the trial court. Having considered the submissions of the parties, we hold that, because the adjudication of neglect has significant potential collateral consequences for the mother, her appeal is not moot.

### I.

E.R. was born in El Salvador on September 4, 1980. In August, 1990, shortly before her tenth birthday, she was brought to the United States to live with her mother, who has resided here for several years. On July 20, 1991, the District of Columbia instituted child neglect proceedings against the mother pursuant to D.C.Code § 16–2301(9)(A) (1989), alleging that the mother had severely beaten her daughter on two occasions with a belt.

Following an evidentiary hearing, the trial judge found that the mother had used excessive force in disciplining E.R. The judge's written order, issued on March 16, 1992, included the following:

> In this case, although the evidence revealed that the injuries sustained were not so severe as to require medical attention and were administered in response to misconduct, the court found [it] noteworthy that the mother admitted she had physically disciplined respondent during the girl's first three months after her arrival in the U.S. and again in February of 1992 (although by then she was ordered not to do so as a condition of respondent's release to the mother). Accordingly, in light of the likelihood of reoccurrence and the severity of the punishment as substantiated by the photographs, this court concludes that the discipline provided to respondent in July of 1991 was part of a dangerous pattern of abuse, went beyond that which was reasonably necessary, and was therefore excessive.

On April 30, 1992, following a disposition hearing, the judge ordered that E.R. remain in the custody of her mother under the protective supervision of the court. He ordered the mother not to discipline the child physically, and he required both mother and daughter to participate in therapy.

The mother filed a timely notice of appeal. On July 9, 1993, while the appeal was pending, the District advised the court that E.R. had been returned to El Salvador, that she was living with relatives, and that she wished to remain there. On the basis of this information, this court issued an order staying the expedited briefing in the case and directing the mother to show cause as noted above. We now conclude that the controversy remains alive. Accordingly, we discharge the order to show cause and direct that the appeal proceed.

### II.

■ We note at the outset that the mother has not been convicted of a crime.[1] Rather,

---

1. An appeal from a criminal conviction is not moot, even if the sentence has already been served, so long as there is a possibility of collateral consequences. *See, e.g., Green v. Green,* 642 A.2d 1275, 1278 n. 4 (D.C.1994) and authorities there cited.

she is a defendant in a civil proceeding. As we stated in *In re S.G.*, 581 A.2d 771 (D.C. 1990),

> [n]eglect proceedings are remedial and focus on the child; they are critically different from criminal prosecutions, which are primarily concerned with the allegedly abusive parent. *In re S.K.*, 564 A.2d 1382, 1388–89 (D.C.1989).

*Id.* at 775.

▮ Nevertheless, an adjudication of neglect may have serious consequences for a parent, especially where, as here, the judge has found that the mother engaged in a "dangerous pattern of abuse." In *In re H. Children*, 156 A.D.2d 520, 548 N.Y.S.2d 586 (2d Dept.1989), the period of supervision imposed by the court as a result of a finding of neglect had expired while the appeal was pending. The State moved to dismiss the appeal as moot. The court held, however, that the controversy remained justiciable, because

> the adjudication of neglect constitutes a permanent, and significant, stigma. Moreover, the finding of neglect might indirectly affect the appellant's status in potential future proceedings. Therefore, the instant appeal is not academic.

*Id.* 548 N.Y.S.2d at 587.

The same reasoning applies here. L.A.R. has three younger children, and the finding of abuse of E.R. could, at some later date, contribute to a finding that the other children are in imminent danger of similar abuse. *In re S.G., supra*, 581 A.2d at 777–78; D.C.Code § 16–2301(9)(E) (1989). "[S]hould a subsequent claim of neglect be charged, we believe that the initial finding at issue in this appeal might at some juncture adversely reflect upon [the mother]." *In re Christenberry*, 69 Ill.App.3d 565, 26 Ill.Dec. 93, 95, 387 N.E.2d 923, 925 (1st Dist.1979).

These considerations militate against dismissal of the appeal. Indeed, in a somewhat comparable area, we have held that the collateral consequences that accompany involuntary civil commitment preclude a finding of mootness even where the appellant has become a voluntary patient and the order committing him is no longer in effect. *In re Blair*, 510 A.2d 1048, 1049 n. 1 (D.C.1986).

The stigma and collateral consequences for the mother are not alleviated in this case by her daughter's absence from this jurisdiction. In *State in Interest of Clark*, 400 So.2d 334 (La.App.1981), a mother appealed from an adjudication of neglect. During the pendency of the appeal, she married and moved to California with the child whom she had allegedly neglected. The court nevertheless denied the State's motion to dismiss the appeal, observing that

> the sanction against a parent is severe where a finding of neglect has been made. To dismiss this appeal as moot would effectively foreclose the mother from attacking any alleged errors in the neglect proceeding and deny her the right to appeal.

*Id.* at 336.

In a related submission,[2] the District cites *In re S.H.*, 570 A.2d 814 (D.C.1990). In that case we declined, in the exercise of our discretion, to dismiss a juvenile's appeal from an adjudication of delinquency. The appellant had twice absconded from custody, but he had been re-apprehended, and he was in detention at the time of the motion to dismiss. We recognized that this court has the authority to dismiss an absconder's appeal, but concluded that dismissal was inappropriate on the facts before us. *Id.* at 815–17.

The present case is quite unlike *S.H.* The mother has not absconded, nor has she been shown or alleged to be in contempt of court.[3] Indeed, according to the mother's counsel,

---

2. In that submission, the District did not ask us to dismiss the appeal as moot, but requested a stay of further proceedings until the child is returned to this jurisdiction.

3. If the mother were in contempt, the situation would be quite different, for courts are disinclined to entertain a contemnor's appeal from an order she has disobeyed. *See, e.g., Early v. Early*, 49 App.D.C. 123, 124, 261 F. 1003, 1004 (1919);

17 C.J.S. *Contempt*, § 97, at 274–78 (1963 & Supp.1994).

> The principle is well established that an appellate court may dismiss an appeal for contumacious violation of an order of the court. One who flouts the order of the court is not in a position to seek judicial assistance.

*Kartman v. Cook*, 189 Neb. 159, 201 N.W.2d 705 (1972).

the judge "made the statement in open court that it might be appropriate to return E.R. [to El Salvador]." *See also State ex rel. Dep't of Human Serv. v. Avinger,* 104 N.M. 355, 721 P.2d 781, 788 (1985) (even if mother's whereabouts became unknown during her appeal, the appeal will not be dismissed as moot). Our decision in *S.H.,* therefore, does not require us to dismiss L.A.R.'s appeal.[4]

## III.

For the foregoing reasons, we conclude that the controversy is not moot. The Order to Show Cause is hereby discharged. The stay of proceedings in this appeal is vacated. Appellee and the District of Columbia shall have thirty days from the entry of this order to file their briefs, and the case will be scheduled for argument in due course.[5]

*So ordered.*[6]

4. In light of our disposition, we do not reach L.A.R.'s contention that the neglect adjudication may have unfavorable collateral consequences for her status as a resident alien and for possible naturalization. *See Guerrero de Nodahl v. INS,* 407 F.2d 1405, 1406–07 (9th Cir.1969); *Application of Polivka,* 30 F.Supp. 67 (W.D.Pa.1939).

5. Unless we are advised that E.R. has been returned to the jurisdiction, the appeal shall be calendared on a conventional rather than an expedited basis.

6. The substantive issue in this appeal being a difficult one, *see In re S.K., supra,* 564 A.2d at 1382–83 (majority opinion), *id.* at 1389–90 (separate opinion of Schwelb, J.), appellant's motion for summary reversal is denied.