John FARRINGTON, Appellant,

v.

Catherine Westerfer FARRINGTON,
Appellee.

No. 2132.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 3, 1958.

Decided May 5, 1958.

Raymond E. Gable, Washington, D. C.,
with whom Roger E. Brooks, Washington,
D. C., was on the brief, for appellant.

No appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

This action was brought by appellant for the annulment of his marriage on the ground of fraud. The wife voluntarily filed an answer in which she neither admitted nor denied the charge of fraud. She did not appear at trial, but was represented there by a court appointed attorney. The only evidence on the issue of fraud was the testimony of appellant and certain letters he had received from her.

Appellant and his wife first met in May 1956 at Fort Knox, Kentucky, while he was a member of the Army and she was a member of the Women's Army Corps. They saw each other frequently and became engaged in September 1956. In October he was transferred to Fort Holabird, Baltimore, Maryland. In November she came to Washington to visit him. In February 1957 he went to see her at Fort Knox and on February 24 they were married at Jeffersonville, Indiana, spent the night together, and on the following day he returned to Fort Holabird. At that time it was agreed she would apply for a discharge and when it was obtained she would go to live with him in Baltimore until he was discharged. He has not seen her since that day.

On May 3, 1957, the wife received an honorable discharge "by reason of marriage" and upon leaving Fort Knox gave a Pennsylvania address as her home address. Although she had informed appellant of her approaching discharge and had promised to join him in Baltimore when discharged, she did not join him and he was unable to locate her or communicate with her. A few days after her discharge he received a telephone call from a woman who identified herself as "Phil." (Prior to their marriage the wife had pointed out to appellant a Wac named "Phil" and had told him that Phil was a Lesbian.) Phil told appellant that she and the wife were together and

were going to California and that he should not attempt to follow them. He asked to speak to his wife and after some argument was allowed to do so. His wife then told him that what Phil had said was true, that she and Phil were in love with each other and were going to California. He urged his wife to come to see him and she promised to do so, but never did.

About two weeks later appellant received a letter from his wife in which she protested her love for him but stated she also loved Phil, and that under the circumstances she could never live with him, and she suggested he seek an annulment or divorce. Sometime later he received a telephone call from her. She asked his forgiveness but said she was with Phil and was in love with Phil and that was all there was to it. A second letter from her asked him not to lose faith in people "because I have treated you so badly." After this action was commenced she wrote to her appointed attorney, stating she did not wish to contest the action but that she would not "consent" to annulment on the ground of fraud because such could be "very detrimental to my future."

■ At the conclusion of the testimony the trial court, after expressing its "approbation for the candor and frankness" of appellant, announced that it could not find clear and convincing proof of fraud, and that therefore, the case would be dismissed. If this were all, we would have no difficulty in affirming, because clearly there was a question of fact whether the wife entered into the marriage contract with an undisclosed intention of not performing, or whether such an intention developed after the marriage and prior to her discharge. We think either conclusion could have been drawn from the evidence and it was for the trial court to determine which was the more logical and probable.

Our difficulty arises from the formal findings of fact and conclusions of law drawn by the trial court as its basis for the judgment of dismissal. After making certain

findings summarizing the evidence, the court found:

"6. All the alleged facts relied upon by the plaintiff in support of his claim of fraud were known to him prior to the marriage, and the consummation thereof, or should have been known to him under the circumstances existing at the time.

"7. The testimony relied upon by the husband in support of his charges of fraud on the part of the wife consist entirely of either letters written by her and introduced in evidence or by alleged verbal conversations over the telephone. There is no other evidence in support of the allegations of fraud, as required by Title 16, Section 419 of the Code of Laws for the District of Columbia, 1951 Ed."

After those findings, the court made the following conclusion of law:

"1. The plaintiff has failed to establish by clear and convincing evidence the allegations of fraud on the part of the defendant and the testimony adduced does not meet the requirements of Title 16–419 of the Code of Laws for the District of Columbia, 1951 Ed."

■■ Appellant attacks finding No. 6 as being entirely unsupported by the record, and we must agree with him. The fact relied upon by appellant in support of his claim of fraud was the fact that his wife entered into the marriage relation with no intention of carrying out the obligations thereof. He was bound to prove this fact and it is not for us to say that he did or did not prove it, but it is entirely incorrect to say that he knew or should have known of this fact prior to marriage. There is nothing in the record to remotely suggest that he did not enter the marriage in good faith or knew or had reason to know of any lack of good faith on the part of the wife. It is true that prior to marriage she had pointed out Phil to him and told him that Phil was a Lesbian, but this occurrence furnishes no reasonable basis for holding that he knew or should have known that his marriage was to be one in form only.

■ Finding No. 7 is also attacked and again we think rightly so. It was not correct to state, as this finding did, that the testimony in support of the charge of fraud consisted entirely of letters written by the wife or telephone conversations. If we ignore all that was said or written, there remains the fact that the wife, when free to join her husband, refused to do so and made no effort even to see him. This fact alone would support, but not compel, an inference that she never intended to be his wife, that all she wished was the marriage in form which she could use as a means of obtaining a discharge from the service. The only other reasonable inference which could be drawn from her conduct would be that she entered the marriage in good faith, but in the ten weeks between her marriage and discharge she changed her mind and deserted him. Which was the more reasonable inference was a question for the trial court. In drawing an inference from the wife's conduct, consideration of her statements and letters would necessarily play an important part, but they constitute merely a part and not all the evidence on the issue of fraud.

■ Finally, the trial court was in error in ruling as a matter of law that appellant's evidence "did not meet the requirements" of Code 1951, 16–419. See Schroeder v. Schroeder, D.C.Mun.App., 133 A.2d 470. The wife's admissions were properly received in evidence,[1] but, as we have already pointed out, appellant did not rest his case solely on her admissions.

Reversed with instructions to grant a new trial.

1. Marshall v. Marshall, 55 App.D.C. 173, 3 F.2d 344, 40 A.L.R. 624.